IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KENYATA K. LYLES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:11-0266 |
| v. ) | Judge Campbell / Knowles |
| ) | Jury Demand |
| RUTHERFORD COUNTY ADULT ) | |
| DETENTION CENTER, et al., ) | |
| ) | |
| Defendants. ) | |

# REPORT AND RECOMMENDATION

## I. Introduction and Background

Pending before the Court are two Motions for Summary Judgment; one filed by Defendants Dr. John Rudd, Cynthia Kovacs-Whaley, Keisha Wisdom, Summer Blais, and Brenda Levin (collectively "Rudd Defendants")(Docket No. 48); and one filed by Defendants Rutherford County Adult Detention Center, Rutherford County, Sheriff Robert Arnold, and Corporal Curtis Little (Docket No. 52). Along with those Motions, Defendants have filed supporting Memoranda of Law (Docket Nos. 49, 54), Statements of Undisputed Material Facts (Docket Nos. 50, 53), and the Affidavits of Defendants Little ("Little Aff."), Arnold ("Arnold Aff."), and Rudd ("Rudd Aff.")(Docket Nos. 52-1 - 52-3).

Plaintiff has not responded to either Motion or to either Statement of Undisputed Material Facts.

Plaintiff, an inmate at the Rutherford County Adult Detention Center at all times relevant

1

to the case at bar, filed this pro se, in forma pauperis, action pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth Amendment rights. Docket No. 1. Plaintiff complains of the treatment he received after a suicide attempt in his cell. *Id.* Plaintiff sues Defendant Rutherford County Adult Detention Center in its official capacity; Defendant Rudd in his individual and official capacities; and Defendants Cynthia Kovacs-Whaley (incorrectly named Cindy Wayley in the Complaint), Keisha Wisdom, Summer Blais, Brenda Levin, Curtis Little, and Robert Arnold in their individual capacities. *Id.* Plaintiff contends that the Defendants associated with his medical care should compensate him for "medical neglect" and for "pain and suffering," while Sheriff Arnold should compensate him "because he was in command over Captain Curtis Little who orchestrated the whole ordeal," and Rutherford County should compensate him because "this incident took place on county property." *Id.* Plaintiff seeks "a lump sum of 1 million dollars from Rutherford County," "a lump sum of 1 million dollars from Dr. Rudd," "a lump sum of $75,000 from Sheriff Robert E. Arnold," "a lump sum of $50,000 from Captain Curtis Little," "a lump sum of $100,000 from Cindy Wayley," "a lump sum of $40,000 from Keisha Wisdom," "a lump sum of $150,000 from Summer Blais," and "a lump sum of $80,000 from Brenda Levin." *Id.* Plaintiff explained:

> A. I am requesting the sum of 1 million dollars from Rutherford County because the incident happened at a county facility. B. I am requesting the sum of 1 million dollars from Dr. John Daniel Rudd because the medical staff involved in this claim all work under his supervision at the Rutherford County Adult Detention Center. C. I request the sum of $75,000 from Sheriff Robert E. Arnold because after the incident occured [*sic*] and the facts were brought to his attention due to the seriousness of the incident he denied knowing anything except for, "The jail has nothing to do with the medical depart [*sic*] at the jail." And also because he is in supervision of Captain Curtis Little who orchestrated a major part of the events described in the "claim" above while working at the

> Rutherford County Adult Detention Center which is a county facility. D. I request a lump sum of $50,000 from Captain Curtis Little who is employed by Rutherford County Sheriff Robert E. Arnold, and knowingly orchestrated pain and suffering/medical mis-conduct [*sic*] with the medical staff at the Rutherford County Adult Detention Center; who are all employed and supervised by Dr. John Daniel Rudd in the claim, above. E. I request a lump sum of $100,000 from Cindy Wayley who is employed by Dr. John Daniel Rudd, at the Rutherford County Adult Detention Center, who knowingly took part in the "claim" stated, for pain and suffering & medical neglect. G. [*sic*] I request a lump sum of $40,000 from Keisha Wisdom who is employed by Dr. John Daniel Rudd, at the Rutherford County Adult Detention Center, who knowingly took part in the "claim" stated, for pain and suffering & medical neglect. H. I request a lump sum of $150,000 from Summer Blais who is employed by Dr. John Daniel Rudd, at the Rutherford County Adult Detention Center, who injected me with the medication (Haldol) knowing that I am allergic to that medicine against my will. For pain and suffering, medical neglect and medical malpractice, in the "claim" stated above. I. I request a lump sum of $80,000 from Brenda Levin who is employed by Dr. John Daniel Rudd, who tried to force me to take the medication "Thorazine" against my will knowing it was not a part of my perscribed [*sic*] medication that I was supposed to be taking. For pain and suffering, medical neglect, and medical malpractice, in the "claim" stated above.

*Id.*

Defendants argue that they are entitled to a judgment as a matter of law because: 1) Plaintiff cannot sustain a § 1983 cause of action because he has not alleged physical injury; 2) Plaintiff's constitutional rights have not been violated; 3) even if Plaintiff's constitutional rights had been violated, he cannot establish the requisite elements of a deliberate indifference cause of action; 4) to the extent that Plaintiff's "medical neglect" claims can be interpreted as medical malpractice claims, those claims must be dismissed because Plaintiff has failed to comply with the Tennessee requirements for medical malpractice claims; 5) negligent treatment does not state a valid deliberate indifference claim; 6) Rutherford County Adult Detention

3

Center is an improper party to this lawsuit; and 7) Sheriff Arnold and Cpl. Little possess qualified immunity from the instant lawsuit. Docket Nos. 49, 54.

For the reasons discussed below, the undersigned recommends that Defendants' Motions for Summary Judgment be GRANTED.

## **II. Facts**[1]

Plaintiff was incarcerated at the Rutherford County Adult Detention Center on December 8, 2010, and continuing through March 8, 2011. Docket Nos. 51-1 and 52-3, Affidavit of Dr. Rudd ("Rudd Aff."), ¶ 6.[2]

On December 18, 2010, Rutherford County Adult Detention Center staff found Plaintiff hanging by a noose he tied to his own neck. Docket No. 52-2, Affidavit of Sheriff Arnold ("Arnold Aff."), ¶ 5; Docket No. 52-1, Affidavit of Curtis Little ("Little Aff."), ¶ 5. Detention Center staff entered Plaintiff's cell and removed him from the noose. *Id.* (Arnold and Little Affs.), ¶ 6. Immediately upon removing Plaintiff from the noose, Detention Center staff contacted their Crisis Team and Dr. Rudd and his staff to administer necessary care for Plaintiff. *Id.* (Arnold and Little Affs.), ¶ 7.

Plaintiff was examined by the Detention Center's medical staff after he attempted to hang himself in the housing unit. Rudd Aff., ¶ 6. Plaintiff reported to the nurses that he wished to end his life. *Id.* Plaintiff was transported to Stonecrest Medical Center for medical treatment. *Id.* He was then transported back to the Rutherford County Adult Detention Center, stripped of his clothes, and placed in a padded suicide cell on suicide watch in the booking area until he could

---

[1]The following facts are in a form required by Fed. R. Civ. P. 56 and are undisputed.

[2]Docket Nos. 51-1 and 52-3 are two identical copies of Dr. Rudd's Affidavit.

4

be transported to the Middle Tennessee Mental Health Institute later that day.  *Id.*; Arnold Aff., ¶ 9; Little Aff., ¶ 9.  Plaintiff remained at the Middle Tennessee Mental Health Institute until December 23, 2010, when he was returned to the Rutherford County Adult Detention Center.  Rudd Aff., ¶ 7.  Plaintiff was again placed on suicide watch at the recommendation of Middle Tennessee Mental Health Institute providers.  *Id.*  Plaintiff was kept in solitary confinement in a suicide cell to prevent him from harming himself; his clothes were taken away to prevent him from using his clothes to harm himself; and he was allowed to make phone calls when policy permitted.  Arnold Aff., ¶ 11, Little Aff., ¶ 11.

On December 24, 2010, Plaintiff was found on his cell floor and appeared to be non-responsive.  Rudd Aff., ¶ 7.  Upon becoming coherent, Plaintiff complained of chest pains and was again transferred to Stonecrest Medical Center, where he was treated and returned to the Rutherford County Adult Detention Center on the same day.  *Id.*  Plaintiff was removed from suicide watch on December 27, 2010.  *Id.*, ¶ 8.  At the recommendation of Defendant Little, Plaintiff remained housed in the booking area of the Detention Center in order to allow for better observation for his own safety.  *Id.*

On December 28, 2010, Plaintiff refused to take his medication.  *Id.*  On December 30, 2010, Plaintiff was moved to the mental health annex to be housed.  *Id.*  By January 17, 2011, Plaintiff was allowed to be housed in the general population, and he was taking his medications as prescribed.  *Id.*  Plaintiff's mental health seemed to improve, and he had no other behavioral episodes for the remainder of his time spent at the Detention Center.  *Id.*  He was released to the workhouse on March 8, 2011.  *Id.*

Defendant Arnold, as the Rutherford County Sheriff, contracted with Defendant Rudd to

provide medical care to inmates. Arnold Aff., ¶¶ 2-3. Defendant Rudd is a physician who has been continually licenced to practice medicine in Tennessee since 1980, and who has practiced internal medicine in Murfreesboro, Tennessee since 1984. Rudd Aff., ¶ 1. Defendant Rudd's practice at all times relevant to the instant action included providing medical services to inmates at the Rutherford County Adult Detention Center (including Plaintiff) and supervising the medical staff (including Defendants Whaley, Wisdom, Blais, and Levin). *Id.*, ¶ 3.

Based upon his education, training, and experience, Dr. Rudd is familiar with the recognized standard of acceptable professional practice in the medical community of Murfreesboro, Rutherford County, Tennessee applicable to the care and treatments of patients such as Plaintiff, as that standard existed from December 2010 through and including March 2011, when care and treatment were provided to Plaintiff during his incarceration at the Rutherford County Adult Detention Center. *Id.*, ¶ 4. Based upon his education, training, experience, and personal knowledge of the medical care and treatment rendered to Plaintiff, Dr. Rudd "can state with a reasonable degree of medical certainty" that he and the medical staff at the Rutherford County Adult Detention Center complied with the applicable recognized standard of acceptable professional practice at all times that care and treatment were provided to Plaintiff. *Id.*, ¶ 5.

Additionally, the actions taken by the Rutherford County Adult Detention Center's staff in removing Plaintiff from his noose and contacting medical personnel were done as expeditiously as possible under the circumstances and prevented further harm to him. *Id.,* ¶ 6; Arnold Aff., ¶ 8; Little Aff., ¶ 8. No employees or agents of the Rutherford County Adult Detention Center and/or Rutherford County ever delayed, denied, or interfered with the

provision of medical care to Plaintiff. Rudd Aff., ¶ 9; Arnold Aff., ¶ 10; Little Aff., ¶ 10. Nothing Defendant Rudd or his staff did or did not do caused Plaintiff any injury that would not otherwise have occurred. *Id.* Neither Defendant Rudd nor his staff knew of and disregarded an excessive risk of harm to Plaintiff, or acted with deliberate indifference to a serious medical need of Plaintiff. *Id.*, ¶ 10.

Because Dr. Rudd has a level of expertise in administering medical care that neither the Sheriff nor the Detention Center staff has, the Detention Center staff should not second guess medical decisions made by Dr. Rudd, or unduly interfere with medical care provided by him. Arnold Aff., ¶ 4; Little Aff., ¶ 4.

### III. Analysis

**A. Local Rules 7.01(b) and 56.01(c) and (g)**

Local Rule 7.01(b) states, in pertinent part:

> **b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendants filed the pending Motions on December 2, 2011 and December 15, 2011. Docket Nos. 48, 52. Plaintiff has failed to respond to Defendants' Motions.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the

7

> motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by a citation to the record. ...
>
> . . .
>
> **g. Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has failed to respond to Defendants' Statements of Undisputed Material Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendants are entitled to a judgment as a matter of law.

**B. Motion for Summary Judgment**

It would be inappropriate to grant Defendants' Motions solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendants have met their burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

**C. 42 U.S.C. § 1983 / Eighth Amendment**

Plaintiff alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994)*.*

"[D]eliberate indifference to serious medical needs of prisoners constitutes the

'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104. The Supreme Court explained that "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed," it states a claim under § 1983. *Id.* at 104-05.

Not every prisoner's allegation of inadequate medical treatment, however, is a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. For instance, courts have held that the accidental, inadvertent, or negligent failure to provide adequate medical care does not state such a claim. *Id.* at 105-06 (citations omitted).

Pursuant to Supreme Court precedent, the Sixth Circuit held, in *Hunt v. Reynolds*, that Eighth Amendment deliberate indifference claims must contain both an objective component, "that [plaintiff's] medical needs were sufficiently serious," and a subjective component, "that the defendant state officials were deliberately indifferent to the plaintiff's needs." 974 F.2d 734, 735 (6th Cir. 1992) (citations omitted).

In order to satisfy the objective requirement, the Supreme Court requires that an inmate demonstrate evidence of a current harm or evidence of a medical complaint or condition of confinement that "is sure or very likely to cause serious illness and needless suffering." *Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993). Under the Eighth Amendment, inmate plaintiffs, therefore, are not required to prove they suffer from an actual physical injury. *Boretti v. Wiscomb*, 930 F.2d 1150, 1155 (6th Cir. 1991) (*citing Parrish*, 800 F. 2d at 610). At the very least, however, plaintiffs must allege unnecessary pain or suffering due to prison officials' deliberate indifference. *Id*.

As for the subjective element, the Sixth Circuit has held that "a determination of deliberate indifference does not require proof of intent to harm." *Weeks v. Chaboudy*, 984 F.2d 185, 187 (6th Cir. 1993). However, there must be a showing of deliberate indifference to an inmate's *serious* medical needs. *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988) (emphasis added) (*citing Westlake v. Lucas*, 537 F. 2d 857, 860 n. 3 (6th Cir. 1976)). In fact, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citations omitted). The inquiry, therefore, according to the Sixth Circuit, is "[w]as this individual prison official aware of the risk to the inmate's health and deliberately indifferent to it?" *Thaddeus-X*, 175 F.3d at 402 (*citing Farmer*, 511 U.S. at 837, 844).

### D.  The Case at Bar

As has been noted, Plaintiff alleges that Defendants violated his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. The undisputed facts, however, demonstrate that the actions taken by the Rutherford County Adult Detention Center's staff in removing Plaintiff from his noose and contacting medical personnel were done as expeditiously as possible under the circumstances and prevented further harm to Plaintiff. The undisputed facts further demonstrate that Plaintiff received appropriate and timely medical attention; that nothing Defendant Rudd or his staff did or did not do caused Plaintiff any injury that would not otherwise have occurred; and that no employees or agents of the Rutherford County Adult Detention Center and/or Rutherford County ever delayed, denied, or interfered with the provision of medical care to Plaintiff. Moreover, it is undisputed that Plaintiff was kept in solitary confinement in a suicide

12

cell to prevent him from harming himself; that Plaintiff's clothes were taken away to prevent him from using his clothes to harm himself; and that Plaintiff was permitted to make phone calls when policy permitted. Finally, it is undisputed that neither Defendant Rudd, nor his staff, knew of and disregarded an excessive risk of harm to Plaintiff, or acted with deliberate indifference to a serious medical need of Plaintiff. There is no genuine issue as to any material fact, and Defendants are entitled to a judgment as a matter of law.

### IV. Conclusion

For the foregoing reasons, the undersigned recommends that Defendants' Motions for Summary Judgment be GRANTED.[3]

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge

---

[3] With the adoption of the Report and Recommendation, all Defendants will be terminated as parties.